**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTL FCSTONE FINANCIAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> PAUL K. YOON, <br><br> Defendant. | Case No. 2020-cv-03764 |

**COMPLAINT**

Plaintiff INTL FCStone Financial, Inc., by and through its attorneys, Michelman & Robinson LLP, for its Complaint against Defendant PAUL K. YOON, alleges, on knowledge of its own actions, and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. Defendant PAUL K. YOON ("YOON") fraudulently induced Plaintiff INTL FCStone Financial, Inc. ("INTL") into opening a Futures & Exchange-Traded Options Account wherein YOON would be permitted to engage in futures trading on margin. In connection with the futures trading account, YOON made written misrepresentations to INTL about his then existing financial condition, along with other misrepresentations, in order to obtain the ability to trade and continue to trade on margin; YOON proceeded to amass a seven-figure negative deficit balance in his account when YOON failed to post sufficient funds necessary to maintain the positions in his account on April 20, 2020, and then made false assurances that funds were forthcoming in order to delay liquidation; and YOON admitted that he lied in that he never had funds to cover the deficit balance.  INTL brings this action to recover the $8,496,946.87 which YOON owes to INTL, as

well as to recover its losses, including fees and costs of pursuing this action, which arise from the fraudulent conduct and actions of YOON.

## PARTIES

2. INTL is a corporation organized and existing under the laws of the state of Florida, which maintains its principal place of business in New York, New York, and which maintains an office for its futures commission merchant in Chicago, Illinois.

3. YOON is an individual who, upon information and belief, is a resident of and domiciled in the state of New Jersey; a Councilman for the Borough of Fort Lee, New Jersey; and an attorney with the law firm of Steinhardt, Cappelli, Tipton & Taylor, LLC.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because this matter is between citizens of different states, as detailed below, , and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, as INTL seeks $8,496,946.87, plus attorneys' fees.

5. This Court has personal jurisdiction over YOON because YOON contractually consented to this Court's jurisdiction and because this action arises out of activities undertaken by YOON within this District, including, but not limited to, opening a Futures & Exchange-Traded Options Account at INTL; making representations, warranties and promises to INTL in connection with that futures trading account; entering into a written agreement with INTL; engaging and authorizing futures trading on contract market exchanges; and breaching his agreement with INTL.

## VENUE

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred within this district.

7. Venue is also proper as YOON contractually agreed that:

**28. Governing Law**; Consent to Jurisdiction. Customer acknowledges that this Agreement is governed by the laws of the State of Illinois. Customer hereby submits and consents to the jurisdiction of the Courts of the State of Illinois and, shall be amenable to services of summons and other legal process of, and emanating from, the State of Illinois. Customer expressly waives the right to the adjudication or enforcement of such controversies by any court or any other tribunal sitting in any other jurisdiction, and further expressly waives the provisions of any statute or administrative ruling defining a commodity or commodity contract to be a security. CUSTOMER AGREES CONTROVERSY BETWEEN FCM AND CUSTOMER ARISING OUT OF THIS AGREEMENT, REGARDLESS OF THE MANNER OF RESOLUTION, SHALL BE ARBITRATED OR LITIGATED IN A COURT OF LAW OR OTHERWISE RESOLVED BY A TRIBUNAL LOCATED IN CHICAGO, ILLINOIS. CUSTOMER HEREBY WAIVES TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING."

(Exhibit A at 23, ¶ 28).

## BACKGROUND

### A. The Opening of the Account.

8. On February 15, 2018, YOON executed an application (the "Application") for a non-discretionary Futures and Exchange-Traded Options Account ("Futures Trading Account") with INTL. (*See* Exhibit A at 9)[1].

9. The purpose of YOON's Application was to induce INTL to open a Futures Trading Account for YOON.

10. YOON's Application included a form bearing his signature (the "Acknowledgement Form"), which acknowledged that the purpose and intention of the Application was for INTL to rely on the information YOON would provide. The Acknowledgement Form stated:

> The undersigned Applicant or agent acting on behalf of the Applicant (the "Customer"), acknowledges that the FCM Division of INTL FCStone Financial Inc. and INTL FCStone Markets, LLC, respectively, are relying on the information

---

[1] Page number references to Exhibit A indicate the page number of the Exhibit A PDF rather than to the page numbers contained in the text of the document.

> herein as the basis of establishing one or more Customer accounts. The undersigned certifies, represents and warrants that all information, including audited or unaudited financials, or Applicants who fill out the income and net worth information in this Account Application and all other information provided is true and accurate.
>
> If the Applicant becomes aware of any false statement or failure to state a material fact in this Account Application or the Agreements to which this Account Application relates and incorporates by reference, or if information contained in this Account Application and such Agreements subsequently changes, Applicant shall immediately notify the FCM Division of INTL FCStone Financial Inc. and INTL FCStone Markets, LLC respectively.

(Exhibit A at 9).

11. Truthful application information is critical to INTL. Applications are strictly underwritten by INTL in order to ensure that account-holders are able to assume and bear the risks associated with margin trading.

12. The risks are explained in the Application, which notes in the "Commodity Futures Trading Commission Risk Disclosure," *inter alia*, that:

> The risk of loss in trading commodity futures contracts can be substantial. You should, therefore, carefully consider whether such trading is suitable for you in light of your circumstances and financial resources. You should be aware of the following points:
>
> **(1) You may sustain a total loss of the funds that you deposit with your broker to establish or maintain a position in the commodity futures market, and you may incur losses beyond these amounts.** If the market moves against your position, you may be called upon your broker to deposit a substantial amount of additional margin funds, on short notice, in order to maintain your position. **If you do not provide the required funds within the time required by your broker, your position may be liquidated at a loss, <u>and you will be liable for any resulting deficit in your account.</u>**

(Exhibit A at 10) (emphasis added).

13. The risks of margin trading are further explained in the "Options Disclosure Statement," which states in relevant part:

> (4) Margin requirements. An individual should know and understand whether the option he or she is contemplating trading is subject to a stock-style or futures-style

— 4 —

system of margining. Stock-style margining requires the purchaser to pay the full option premium at the time of purchase. The purchaser has no further financial obligations, and the risk of loss is limited to the purchase price and transaction costs. Futures-style margining requires the purchaser to pay initial margin only at the time of purchase. The option position is marked to market, and gains and losses are collected and paid daily. The purchaser's risk of loss is limited to the initial option premium and transaction costs. **An individual granting options under either a stock-style or futures-style system of margining should understand that he or she may be required to pay additional margin in the case of adverse market movements.**

(Exhibit A at 13) (emphasis added).

14. Despite signing the Acknowledgement Form, YOON made several misrepresentations, including, but not limited to, his then-existing financial condition, in his Application with the intent to fraudulently induce INTL into allowing YOON to open an account with INTL and trade on margin.

    a. With respect to YOON's "Employment Information," in his Application, YOON represented that he was "self-employed" since the year 2012 as an "energy trader." (Exhibit A at 4).

    b. YOON's representation as described in paragraph 14(a) was knowingly false or misleading. YOON is presently, and was at the time of his application, a practicing attorney and a Councilman for the Borough of Fort Lee, New Jersey, and not a self-employed energy trader. YOON's LinkedIn, a true and accurate copy of which is attached as Exhibit B, reveals that was a partner at the law firm Wong Fleming, P.C. from November of 2011 to December of 2016, and that he has been a partner at the law firm Florio Perrucci Steinhardt and Cappelli, LLC from January 2017 to the present. YOON's LinkedIn does not at any point indicate he was an "energy trader."

c.  With respect to YOON's "Trading Information," in his Application YOON represented that his objective was speculative trading, and that he was experienced in energy investments since 2012. Upon information and belief, this representation was knowingly false. (Exhibit A at 4).

d.  With respect to YOON's "Primary Account Holder's Financial Information, in his Application, YOON represented that his "Annual Revenue from All Sources in U.S. Dollars" was "$500,000 - $1,000,000." (Exhibit A at 7). Upon information and belief, this representation was knowingly false.

e.  With respect to YOON's "Primary Account Holder's Financial Information, in his Application YOON represented that his "Total Net Worth in U.S. Dollars" was "$1,000,000 - $5,000,000." (Exhibit A at 7). Upon information and belief, this representation was knowingly false.

f.  With respect to YOON's "Primary Account Holder's Financial Information, in his Application, YOON represented that his "Available Working Capital in U.S. Dollars" was "$1,000,000 - $5,000,000." (Exhibit A at 7). Upon information and belief, this representation was knowingly false.

g.  In his Application, YOON represented, "no," to the question: "Is any controlling person of the Applicant or any member of its immediate family a current or former political official in any branch of government or affiliated with a government owned enterprise, other than the U.S. Government?" This representation was knowingly false, as YOON was at the time a Councilman for the Borough of Fort Lee, New Jersey. (*See* Exhibit B).

15. INTL reasonably relied upon the misrepresentations described in paragraph 14 in opening a futures trading account for YOON. Absent these misrepresentations, as well as the warranties and promises made by YOON, INTL would not have undertaken the risk of allowing YOON to open and trade a futures trading account or to engage in the trading strategy which YOON implemented.

      **B.**      **The Futures Account Agreement.**

16. In connection with the opening of the account, YOON also executed a Futures & Exchange-Traded Options Account Agreement ("Futures Account Agreement") in which YOON acknowledged that "COMMODITIES INTERESTS INVOLVE TRADING IN HIGHLY LEVERAGED POSITIONS AND POTENTIALLY RAPIDLY FLUCTUATING MARKETS AND MAY RESULT IN RAPID AND SIGNIFICANT LOSSES, WHICH MAY BE IN EXCESS OF ANY MARGIN DEPOSITED BY CUSTOMER." (Exhibit A at 18, ¶ 8).

17. In the Futures Account Agreement, YOON agreed at all times to maintain such margin in his account as INTL may from time to time in its sole discretion require and that YOON would meet all margin calls within the time specified by the INTL, by prompt wire-transfer of funds. (Exhibit A at 17, ¶ 4).

18. In the Futures Account Agreement, YOON agreed that, in the event that YOON's account was under-margined, had zero equity or was equity deficit at any time, INTL had the right, in its sole discretion, to liquidate all or any part of YOON's positions through any means available, without prior notice to YOON. (Exhibit A at 17, ¶ 4).

19. In the Futures Account Agreement, YOON agreed to indemnify INTL from and against any Losses (including reasonable attorneys' fees) caused directly or indirectly by YOON's failure, breach of, or failure to perform any provision of the Futures Account Agreement or refusal

to fully and timely comply with any provision of the Futures Account Agreement, as well as any misstatement of YOON's representations and warranties contained in the Futures Account Agreement or any other documentation delivered by YOON to INTL that is untrue or ceases to be true and correct as of the date of the Futures Account Agreement (Exhibit A at 18, ¶ 7).

20. YOON also agreed to pay promptly to INTL all reasonable attorneys' fees incurred by INTL in the enforcement of any of the provisions of the Futures Account Agreement. (Exhibit A at 18, ¶ 7).

21. In the Futures Account Agreement, YOON agreed to pay INTL for the amount of any trading loss, debit balance or deficiency in his account and to reimburse INTL for the debit and all costs incurred, including reasonable attorney' fees, in connection with collection actions and to pay interest on debits and deficiencies at an annual rate of 1% over the prime rate as published by the Wall Street Journal on the date such debit or fee was incurred or other rates as negotiated. (Exhibit A at 19, ¶ 9).

22. YOON also agreed that INTL had the sole discretion and right to liquidate the account in accordance with Section 18 of the Futures Account Agreement and that Yoon shall be liable to pay any deficiency remaining in the account after such action was taken, together with interest thereon and all costs relating to liquidation and collection, including reasonable attorneys' fees. (Exhibit A at 21, ¶ 18).

23. Yoon represented and warranted to INTL he was capable of assuming the risks of the trading and determined that such trading was suitable and appropriate for YOON. (Exhibit A at 23, ¶ 22(e)).

24. Yoon represented and warranted to INTL that the futures transactions contemplated by the Futures Account Agreement were suitable and appropriate for YOON and consistent with his investment objectives. (Exhibit A at 22, ¶ 22(a)).

25. Yoon represented and warranted to INTL that the Account Application executed by YOON in connection with the Futures Account Agreement (including the financial statements furnished in connection therewith) is true, correct and complete. YOON further agreed to notify INTL in writing within (2) two business days if any of the warranties and representations contained therein became inaccurate or in any way ceased to be true and complete. (Exhibit A at 23, ¶ 22(j)).

26. YOON never provided any such notice to INTL.

**C.     The Trading of the Account.**

27. Thereafter, based upon the representations, warranties and promises made by YOON to INTL, an account was opened for YOON and YOON began trading his account.

28. YOON traded using margin. That is, when YOON purchased or sold options or futures contracts, he did not deposit the full value of the contract in his account. Instead, he made good faith deposits, known as margin.

29. Minimum margin requirements are set by futures exchanges. Exchanges set minimum margin requirements, which is the amount of funds that an account-holder must hold in its account to buy or sell a futures contract. Once an account-holder establishes a futures position, the account-holder continuously must meet minimum maintenance margin requirements. That is, the net liquidating value of the account (i.e. the amount of money that would remain in the account if all positions were sold) plus the value of any cash in the account must be higher than the minimum maintenance margin requirements.

30. Futures commission merchants ("FCM"), like INTL, are free to add to the minimum maintenance margin requirements set by the exchange and require that its account-holder post additional margin, but FCMs cannot set margin requirements that are lower than exchange minimums.

31. In addition, FCMs are required each day to post sufficient margin to the exchange to cover the obligations of their account-holders, regardless of whether the account-holder has sufficient funds in its account with an FCM. Thus, account-holders who fail to maintain minimum margin requirements are trading by using the capital of the FCM and their positions can expose the FCM and its other account-holders to loss.

32. At all times relevant, YOON traded the account on his own.

33. YOON's trading strategy initially was successful and generated hundreds of thousands of dollars of profits for Yoon.

34. Prior to April 20, 2020, on the occasions in which YOON ran a margin deficit in his account, YOON had always wired funds to INTL to cover his position limits.

35. YOON withdrew over $2,138,000.00 from his account between on or about January 3, 2019 and April 7, 2020.

**D.    The Margin Calls on April 20, 2020.**

36. On Monday, April 20, 2020, during the course of the day, crude oil prices plunged below $0 per barrel.

37. As of April 20, 2020, YOON in his futures trading account with INTL had taken a significant long position in May crude oil futures.

38.     As crude oil prices crashed on April 20, 2020, YOON did not react to these adverse market conditions; as a result, YOON's futures trading account ran a deficit and YOON did not wire funds to cover his positions.

39.     Instead, throughout the day, YOON represented that he had at least five million dollars in liquid assets and was able to cover his deficit balance.

40.     Yoon represented that funds were forthcoming to cover the positions.

41.     This representation was false at the time it was knowingly made by YOON.

42.     The representations made by YOON was intended to delay liquidation.

43.     In reliance of this misrepresentation by YOON, INTL delayed liquidating YOON's positions, which resulted in further financial losses.

44.     At or about approximately 2:41 p.m. on April 20, 2020, after speaking with YOON who now confirmed that funds would not be forthcoming, with YOON's knowledge, INTL liquidated YOON's positions at that time, and disabled YOON's account access in order to prevent any further loss.

45.     By the time YOON's positions were liquidated, his account reflected a margin deficit of $8,496,946.87.

46.      YOON's deficit balance was immediately due and payable on April 20, 2020.

47.     YOON failed to pay any portion of this debit.

48.     On April 24, 2020, demand for payment of the debit was served upon YOON. A true and accurate copy of the letter is attached hereto as Exhibit C.

49.     To date, YOON has not paid any portion of this debit.

### COUNT I – FRAUD AND FRAUDULENT INDUCEMENT

50.     INTL repeats and realleges paragraphs 1 through 49 hereof, as if fully set forth herein.

51. YOON made numerous knowingly false statements, including, but not limited to, his then-existing financial condition, in his Application in order induce INTL into opening a futures trading account for YOON at INTL.

52. INTL reasonably relied on YOON's knowingly false statements, representations, warranties and promises in opening a futures trading account for YOON and permitting YOON to trade futures on margin.

53. YOON made knowingly false statements in order to obtain a futures trading account with INTL, concealing his true personal information which he knew would preclude him from obtaining such an account as he would be deemed too risky.

54. INTL has been damaged and incurred loss as a result of the fraudulent conduct of YOON, an attorney and Councilman for the Borough of Fort Lee, New Jersey.

55. INTL has been damaged in the form of the $8,496,946.87 debt which YOON incurred and refuses to pay, which arose from a futures trading account that would never have been opened had YOON prepared a truthful application.

56. INTL contractually is entitled to an award of attorneys' fees under the Futures Account Agreement.

## COUNT II – BREACH OF CONTRACT

57. Plaintiff repeats and realleges paragraphs 1 through 56 hereof, as if fully set forth herein.

58. The Futures Account Agreement is a valid and binding contract.

59. INTL fully performed all of its obligations under the Futures Account Agreement.

60. Within the Futures Account Agreement, YOON agreed that he would be liable for any margin deficit in his Futures Trading Account. (Exhibit A at 10).

61. YOON incurred a margin deficit of $8,496,946.87 in his futures trading account.

62. Although YOON agreed to assume the risk of loss associated with his trading strategy, agreed to pay any debit balance in his account, and agreed to indemnify INTL for its losses, YOON failed or refuses to do so in breach of the Futures Account Agreement.

63. INTL demanded payment of the debit from YOON. *See* Exhibit C.

64. Despite demand YOON has not paid any portion of the $8,496,946.87 debit balance in his futures trading account.

65. YOON, therefore, breached the Futures Account Agreement.

66. INTL has been damaged in the form of the $8,496,946.87 debit caused by YOON's breach of his representations, warranties, promises and obligations under the Futures Account Agreement.

67. INTL contractually is entitled to an award of attorneys' fees under the Futures Account Agreement.

WHEREFORE, INTL FCStone Financial, Inc. requests judgment as follows:

A. On Count One, awarding damages in favor of INTL, in an amount to be determined at trial, but not less than the $8,496,946.87 debit balance due and owing from YOON to INTL, plus attorneys' fees and costs and pre-judgment interest;

B. On Count Two, awarding damages in favor of INTL, in an amount to be determined at trial, plus attorneys' fees and costs and pre-judgment interest;

C. Granting INTL such other and further relief as the Court deems just and proper.

Dated: June 26, 2020

Respectfully Submitted,

MICHELMAN & ROBINSON, LLP

*/s/ Seth E. Darmstadter*
Seth E. Darmsdadter (ARDC #6284759)
Matthew R. Lasky (ARDC #6318140)
sdarmstadter@mrllp.com
mlasky@mrllp.com
200 South Wacker Drive, Suite 2900
Chicago, IL 60606-5896
Tel: (312) 638-5671
Fax: (312) 638-5672

*Attorneys for Plaintiff*